517 P.2d 1023

**Daniel E. CATMULL and Sharon B. Catmull, his wife, Plaintiffs and Appellants,**

v.

**MEDICAL INTEGRATED SYSTEMS, INC., Defendant and Respondent.**

**No. 13307.**

Supreme Court of Utah.

Jan. 2, 1974.

Samuel King, of King & Craft, Salt Lake City, for appellant.

David W. Slagle, of Worsley, Snow & Christensen, Salt Lake City, for respondent.

CROCKETT, Justice:

The plaintiffs sued the defendant ambulance service alleging negligence in connec-

---

tion with the drowning of their eleven-year-old son Clark at the Hygeia Ice Company pool in Sugarhouse on July 15, 1970. On the basis of the pleadings, answers to interrogatories and stipulated facts, the trial court granted defendant's motion for summary judgment on the ground that a settlement and release of the swimming pool operator, Hygeia Ice Company, also constituted a release of this defendant. Plaintiffs appeal.

On the day mentioned plaintiffs' son Clark had gone with a church party to the swimming pool. During its progress Clark's friend Rick Crawford saw him lying at the bottom of the pool. The lifeguard and others pulled him out and attempted to revive him by mouth-to-mouth resuscitation and other measures for a period of about 20 minutes until defendant's ambulance arrived. There is a dispute of fact as to what this accomplished. In answers to interrogatories, plaintiffs state that Clark had substantially revived; that though he was still unconscious, he had a heartbeat and pulse and was breathing when the ambulance took him. Whereas, defendant states that he had definitely expired and that there was no revival. It is not disputed that he was dead on arrival at the hospital.

Pursuant to negotiations through their attorney the plaintiffs entered into an agreement of settlement and release which stated:

Whereas, on or about the 15th day of July, 1970, an accident occurred, resulting in bodily injuries to Clark Nelson Catmull, a minor, . . . and, whereas claims are made against Hygeia Ice Company, et al . . . for such injuries . . . for themselves and as parents, . . . and, whereas a dispute has arisen with respect to the legal liability for such injuries, . . .

NOW, THEREFORE, the claimants in full accord and satisfaction of such disputed claims, do hereby acknowledge the receipt of the sum of Five thousand dollars, ($5,000.00) paid by the said Hygeia Ice Company, et al and, in consideration thereof, the claimants do hereby . . . release, and forever discharge the said Hygeia Ice Company, et al . . . of and from any and all claims, . . . and causes of action of whatsoever kind and nature, arising from, . . . any and all known and unknown, foreseen and unforeseen . . . injuries, . . . and the consequences thereof, . . .

AND, FURTHERMORE, We . . . do hereby . . . agree, . . . to indemnify and hold forever harmless the said Hygeia Ice Company, et al . . . against loss from any and all further claims, demands and actions . . . that may hereafter at any time . . . brought by . . . anyone on behalf of said minor . . . for damages on

account of the injuries sustained . . . ..

In attempting to reverse the ruling that the foregoing release barred them from maintaining this suit, the plaintiffs urge these propositions that there are issues of fact: (1) as to whether Clark had expired at the time defendant took charge of him and placed him in its ambulance; (2) as to whether the defendant was guilty of negligence subsequent to and independent from any negligence of the Hygeia Company in failing to take proper measures to save the boy's life on the way to the hospital; and (3) that the release ran only to that company.

In regard to plaintiffs' arguments: as to (1) above, it is to be conceded that there is a disputed issue as to whether Clark was alive when the ambulance arrived; as to (2), in order to get to the core issue, let it be assumed that there is also an issue as to the defendant's negligence. In regard to (3), whether the release to Hygeia barred this action against this defendant, perhaps as clear a way as any to approach the problem is to take the example stated by professor Prosser in his text on torts: Motorist A negligently runs his car over X, a pedestrian, and fractures his skull, and leaves him in the street. Motorist B then negligently fails to see X in the street, runs over him and breaks his leg. X sues A. He can recover from A for both the skull fracture and for the broken leg, because the later act of B was reasonably foreseeable and thus the further injury was a proximate result of A's negligence.[1] That respected authority also points out that if a person is so injured by two separate wrongdoers, a settlement and release entered into with one, should not be deemed to release the other unless the language of the release clearly indicates that such was the intention of the parties.[2]

We have no disagreement with the principles just stated. They are sound enough when applied to appropriate situations, where there are in fact two separate and independent tort feasors, who by independent acts of negligence cause separate injuries and damages to another person. But that is not this case. The plaintiffs did and could suffer only one loss and damage from the death of their son; and the law allows them only one cause of action to recover therefor.[3] The instant case is not analogous to the example given above where an injury is inflicted by a first actor

---

1. Law of Torts, Prosser, 3d ed. 1964, p. 255; though not pertinent here, we note our accord with the professor's further statement that the converse is not true. If X sues B, he can recover only for his broken leg, because B had nothing to do with causing the prior injury, the skull fracture.

2. Ibid., p. 272.

3. Sec. 78–11–6, U.C.A.1953.

A, and there is a subsequent injury by a second actor B, resulting in *further injury and damage*. It is better compared to a situation where a first actor A, has taken property of the plaintiff and converted it to his own use, so that the plaintiff has been deprived of all of the value therein; and the plaintiff accepts settlement from A on that claim. No matter what a second actor B may have done to the property, he would cause no further damage to the plaintiff. Consequently, plaintiff could recover no damage from B.

It is true that the insurance release form used is laden with the usual "boiler-plate" verbiage about all injuries and damage, past, present and future, real and imagined, without mentioning the simple and vital fact of the boy's death. Nevertheless, when it was executed everyone concerned knew that he was long since dead, and the only purpose the settlement could have was to compensate the plaintiffs for whatever damage they suffered by reason of the death of their son. We see no logical basis for a conclusion that the single cause of action, concerning which the plaintiffs had agreed to and accepted a settlement, could be regarded as being divided into two separate causes of action, with the plaintiffs retaining one to be asserted against a subsequent alleged tort feasor (defendant ambulance company) who could have caused them no further damage. Accordingly, inasmuch as it appears that the plaintiffs had accepted the settlement and released their claim for their loss from the death of their son, trial court was justified in his determination that there remained to them no further cause of action on which to maintain this suit against the defendant ambulance company.[4]

Our conclusion just stated makes it unnecessary to be concerned with the other problem which would arise from the defendant's contention that the conduct of the Hygeia people, and of the defendant, in attempting to save the boy's life were so interrelated that they should be regarded as one integrated occurrence, so that if they committed a wrong, they should be regarded as joint tort feasors; and the plaintiffs having accepted settlement and released one (Hygeia), without reserving rights against the other (this defendant) had the effect of releasing them both anyway.[5]

On the basis of our discussion herein it is our opinion that the trial court did not

---

4. That in dealing with such problems, importance is placed on the evident full settlement with the first alleged wrongdoer, see Williams v. Greene, 29 Utah 2d 141, 506 P. 2d 64; Daily v. Somberg, 28 N.J. 372, 146 A.2d 676.

5. See Secs. 15-4-1 and 15-4-5, U.C.A.1953, of the Joint Obligors Act. Its language plainly indicates it applies to tort actions; and it provides that a settlement with one is a settlement with all, unless otherwise indicated and a right to sue is reserved.

err in granting the defendant's motion for summary judgment.

Affirmed. Costs to defendant (respondent).

CALLISTER, C. J., and HENRIOD, ELLETT and TUCKETT, JJ., concur.